Today we have three cases scheduled for oral argument. We also have one case which has been submitted on the briefs and for the purposes of the record that the case to be argued is APPLIED MATERIALS v. MULTIMETRICS. Mr. Kaplan, you are reserved two minutes for rebuttal. Good afternoon, Your Honors. Jeff Kaplan from Kaplan Gilman and Pergamon for Appellants. Your Honors, I want to start with the procedural issue, the timeliness of this appeal. The amended complaint states the 287 patent and each of its claims are unenforceable because MULTIMETRICS, Boris Kessel, Ellett Gershenson, and Mort Kessel committed inequitable conduct. That amended complaint was filed months after final judgment on the inequitable conduct issue adverse to MULTIMETRICS only had been issued. Now in our papers, we cited a litany of case law, mostly in the reply brief at pages three to six, indicating that when the Court permits that amended complaint to add parties once final judgment has already been entered, it has to vacate the final judgment. Why is that? It was a final judgment here, but it was Rule 54B, correct? It's jurisdictional. So it wasn't quite a matter of the judge having decided the entire case and the case not being before the judge, right? Yes, Your Honor. There are numerous ones of those cases that involve Rule 54B judgments. I'm about to get to those. The rule that you can't amend by adding parties to a Rule 54B judgment, several of those cases we cited, the Federal Deposit Insurance Corporation case, in that case, after final judgment was entered, the parties stipulated and sent the judge an amended complaint that he entered by stipulation. Months later, in further proceedings, the judge said that when I entered that, inherently I vacated the old judgment because I had no power to enter that without vacating the old judgment. What are we arguing about here? That's exactly what I'm... Because we've got two cases here, right? And my understanding, we've got two appeals here, 1149 and 1150. One of them, I believe, is on behalf of multi-matrix. Correct. And it's to challenge the inequitable conduct and to challenge the attorney's fees. Correct. The other one is just to challenge the attorney's fees on the... Well, the individuals have an independent right to challenge inequitable conduct. So when you're talking about the 54B here, are you talking about it in the context of the right to get money out of the individuals or are you talking about it in the right to get money out of multi-matrix? It's both, Your Honor, because the way to appreciate that it's both is to line this case up against Ohio Cellular. And this, I have to admit, probably could have been made clearer in our brief. In Ohio Cellular, there's a first opinion out of this court, I think in 95 or 96, that's just plain vanilla 102 anticipation. Then after that, the defendant and the patent is held invalid. After that, and these dates are critical, they're all in this court's opinion and it's very important. What happened after that is there was a motion for attorney's fees and they went to the district judge and they said, hold this patent was procured by fraud and give us attorney's fees. The judge awarded attorney's fees on that and it was a company only on January 20th, 1998. February 3rd, 10 business days later, i.e. the time to file a Rule 59 motion to amend, to add parties, the individuals were added to the complaint and later in May, four months after that, a new judgment was entered that held that the individual and the company was liable and both of those parties appealed. That's what we have here. We have a judgment of inequitable conduct against a company in July of 08. We have an amended judgment that comes out the following year that says not only did the company commit inequitable conduct, but these individuals committed inequitable conduct and then we have all those parties appealing. So they line up just like that. There's two distinctions between Adams v. Nelson and this case. One is critical, one's not important. The first distinction is in Adams v. Nelson, they moved to add the individuals 10 days after final judgment against the corporation was entered. So they were within the Rule 59 time. Here, the trial judge ordered, applied not to file any post-judgment motions after she entered the July judgment, but they did file it within 14 days of when they finally could. So maybe Rule 59 still applies, but even if it doesn't, the only other way she can let them alter that same claim upon which final judgment's been entered is to do it under Rule 60. And there are many cases and treatises that we've cited that says it's one or the other. That distinction doesn't matter, whether they added the individuals under Rule 59. Why doesn't it matter? I'm sorry? Why doesn't it matter? Because the judge did permit them to add the individuals. So while we think that it had to happen under Rule 59, if this Court disagrees with us, the only other option is that it should be filed under Rule 60. That's what the cases say. The more critical distinction is that when the amended judgment was entered in that case, all the parties appealed to this Court. This Court's opinion on the case says that the corporate defendant and the individual that had been added by the post-judgment motion appealed. And then this Court says later in the opinion that neither of those parties has challenged the inequitable conduct finding. And therefore, the only issue is whether collateral estoppel against the individual is proper, because the underlying inequitable conduct on the merits, although both parties appealed, they never briefed and they never challenged it. And this Court's opinion says so. So it became final, and then you're just dealing with collateral estoppel. Here we've briefed why we don't think our individuals controlled the company and should be bound by collateral estoppel. Didn't you waive that argument? The District Court concluded that you did control it, and you never contested that. But even... So, right, right? I don't think that's correct, but even if this Court were to disagree and found our individual... Show me where you contested it. I'm sorry? Show us. You just told Judge Frost that she was incorrect, and you did, in fact, contest something. So show me where... I believe the individuals... I don't have the brief in. I think the individuals put a brief in, but, Your Honor, it's a... And I can cite you that. I will send that in. I believe they put another brief in asking to have their day in court. I'm sure of it. But even if I'm incorrect, and the individuals are deemed to control it, remember in the Ohio Cellular case, the company and the individuals come up, no one appeals the inequitable conduct. So now it's final, and they apply collateral estoppel. Here, after the judgment is altered in the post-judgment motion to add the individuals, the company and the individuals come up, and they do appeal the merits of the inequitable conduct. We're here arguing it now. You don't have the final judgment... Counsel, suppose that there was never any adding of the individuals in this case. Multimetrics was found to have committed inequitable conduct in July of 2008. In May of 2009, there's an exceptional case finding. Say in November of 2009, there's an amendment to that exceptional case finding, but not adding individuals. If this appeal was filed, would Multimetrics have a right to be appealing the inequitable conduct according to the dates, or would they be time-barred because they didn't appeal from the 54B final judgment of inequitable conduct within the relevant time period after the July 2008 order? If the judgment had not been disturbed, they would be time-barred. But if the amendment that you're referring to actually permitted an amended complaint, whether it added the individuals or not, if it amended the Rule 54B judgment, then the judgment... Counsel, in this case, it only amended the complaint as to the exceptional case claim. There's not a single word that's changed from inequitable conduct. That's incorrect, Your Honor. The complaint says the 287 patent and each of its claims are unenforceable because Multimetrics, Boris Kessel, Ellen Kirshenbaum, and Mark Kessel – this is at age 1645 – they added parties to the same claim upon which final judgment had been entered. There was a final judgment of inequitable conduct, and then they said, now we want to have three more people. If they had only moved for attorney's fees judge, they'd have an attorney's fees judgment against only Multimetrics. There was two ways to get the individuals in. They could do a post-judgment motion to get them in, but then you've got to unwrap the judgment, and this is jurisdictional. There's no case to the contrary. The other thing they could have done is let this appeal go through without amending their complaint and sued the individuals separately. Well, can you give us the cite on 1645? The top paragraph, paragraph 27. They specifically charged these three additional parties with the same inequitable conduct after final judgment had been entered. What are you seeking here with respect to We're seeking a vacator of the holding of inequitable conduct. So you want us to review the inequitable conduct for purposes of both Multimetrics and the individual's name? Correct, but we're also seeking So if we affirm the finding of inequitable conduct, where do you lock them? Then the problem is that you still can't hold these individuals because, as we've pointed out in the brief, you can go through this whole record. The individuals that were of these signatures, and who put them there, and when they were put there. The district court made a specific fact finding that they had knowledge, and that was based on their repeated lies and lack of credibility, both before the prosecution and during litigation when they changed their story time and time again as to signatures and dates of death and conception events and everything else. The district court found, as a matter of fact, that they had knowledge. Your Honor, the only evidence the district court relies on, if you read the opinion that I can see, is this idea that they couldn't remember dates, but the problem with that is the dates that they gave, that she said they lied, would not have made the problem go away. They still would have had the problem of the signatures being, because the dates they gave were before the second problematic signature. She found that Boris, and I don't remember his last name, help me out, what was it? Kessel. Mr. Kessel, who controlled the prosecution, was the person in charge of all of the documents communicating back and forth, and that he and the other inventors signed. So, who forged the name if it wasn't one of them? Are you saying the attorney did, the prosecuting attorney? No. Because you know what? The prosecuting attorney is an agent of the inventors anyway. I know that. No, no, I wouldn't say that, Your Honor. On who else's shoulders could this forgery have fallen? Your Honor, I just, with all respect, dispute your characterization of what the trial judge found. She did make all these adverse findings about the dates being wrong, and then, you know, testifying, but, but the, Mark Kessel, the defendant Mark Kessel, he's a business guy, he's not an inventor, and the only thing he did was give the wrong date of death. There was no evidence that has him involved in the prosecution, and the same for Gershenson. Boris Kessel was the guy forwarding documents to these two assistants that are talked about in our brief that were helping them file the patents, and we think, looking back at the record, that one of them added it, but there's no evidence that says Boris Kessel knew about that, and he didn't. He never had a chance to defend himself or bring evidence of this, because we didn't know the thing was an issue. These defendants, these individuals, did not know that those signatures existed in the contract. Mr. Kaplan? I'm sorry? Go ahead. Can I go back to the procedural things we're up here? One of the things you are trying to appeal with respect to multi-metrics is the order with respect to holding yet liable for attorney's fees? Correct. Where's the judgment on that order? I think the way the judge did it, as I, as I recollect, is that in May of 2009, she entered just an opinion on it, and then the judgment is the January 10th thing that basically subsumes everything before that. Well, tell me how, what about the January 10th thing? I'm sorry, January 6, 2010, Your Honor. Can you point to that in the, is that on A41? Yes. Well, it seems to me the problem you have there is you say it basically subsumes everything, but it doesn't say that it's subsuming anything other than liability joint and severally by the three individual defendants. But what we're saying, Judge, is that when, when she allowed the filing of an amended complaint for inequitable conduct against three parties, and when she did that after judgment had been entered against one party on that inequitable conduct. Well, that's my question. No, I just, a judgment had been entered in terms of liability? Of inequitable conduct? Yes. Back in July of 2008. That's inequitable conduct. Correct. Not the liability for $1.4 million for attorney's fees. Correct. Where's the judgment on the $1.4 million? That's the A41 judgment. But that doesn't refer to multimetrics. It is order and a judge that from any and all defendants, and it lists the three defendants as joint and several liability. It doesn't make any mention of multimetrics. Because there was, there is no judgment then against multimetrics. Well, that was my question. If there's no judgment, then how can you appeal it? Because what it is, is the Rule 54B judgment existed against multimetrics. The attorney's fees award in May, just that didn't state the appeal. But the May attorney's fees award just modifies that judgment to award attorney's fees. But it doesn't include a judgment against multimetrics. The May one does. We are showing. May, this is the judgment. Yeah, I'm running out of my time, Your Honor. I did want to say. No, we'll restore some time. Okay, thank you very much, Your Honor. $1.4 million is issued in May. A18. In A18, this is the award of attorney's fees and this just. Yeah, this is an order. This isn't a judgment. Right? We have an order and then we have a judgment. I see the order. Yeah, I know there's an order. The question is, where's the judgment? But not in the record. Your Honor, I know my experience typically with attorney's fees is they just simply award the attorney's fees. Do you think you can appeal here without a judgment? No, I can. I cannot. But what I believe is when the judge awarded that judgment. No, she issued an order finding the case exceptional and awarding attorney's fees. But there's no judgment on this order. There has to be a judgment on the order if there's not. Your Honor, I don't. I mean, just like there was a judgment with respect to the individual. Your Honor, perhaps I would agree, but even if there is no judgment of the attorney's fees, you still have this issue that you had final judgment on inequitable conduct against multi-metrics and then there were three other parties added and sued for that same claim. When did that 54 be? You want to appeal the 54 be? Correct. When would you say your clock started to run? To appeal it? Yes. The time to appeal that ran either in November of 2009 when she disposed of the post-judgment Rule 60 motion to add the individuals or in January when the individuals were in fact, when a judgment was entered against them. But you're saying that the judgment on the 54 be was vacated. It has to be. At that point. Then it was vacated in place of the January judgment. So I think maybe what Judge Post points out, it may be we know that the 50. Well, the January judgment doesn't deal with inequitable conduct. It only deals with attorney's fees. So if you say that the original 54 be was vacated, where's the new 54 be? Your Honor, there's an opinion that goes with that January 6th judgment. Right. And I'm sorry. It would be on exceptional case? Is that the one you're talking about? It's the one that holds that the individuals are liable. Right. There's a memorandum and order. That's the opinion. And that opinion then gets implemented in a judgment. That's how you implement an opinion in a judgment. That's what you need to file an appeal, correct? Correct. So where's your judgment with respect to the inequitable conduct and with respect to multi-mate that's been liable for $1.4 million? The inequitable conduct is the 54 be, but you're telling us that that 54 be was vacated when they amended the complaint. That's correct. So I'm looking for a new judgment on inequitable conduct. Well, Your Honor, the way I think it has to work, and I'm sure I can find cases on this, I just don't have them handy, is that when they filed the amended complaint, the only final judgment at issue, the rule 54, was vacated. That was never done officially. You're just saying as a matter of law it was vacated. Yes, but in prior cases, in FDIC, they do that. That's right. We're saying that it had to be or else it's a nullity, and I would encourage the court. Counsel, I want to take you back to that for one more second because on page 1644, which is where you directed me, how is it that you say this claim was amended, the inequitable conduct claim amended, to be against the individuals? The claim says first claim for relief against defendant multi-metrics. It makes it crystal clear this is a claim against multi-metrics as opposed to the third claim, which is added and is against specifically the individuals. I'm sorry, the next page, 1645. That's not a claim. That's an allegation of theft, right? Inequitable conduct can result from the actions of an individual, but that's not a claim against those individuals. But they will – this was a claim against the individual because the – No, it didn't. I don't think this was a claim against those individuals. But the judge – I have to say it's a claim against those individuals. Well, first of all, the complaint names them. The amended complaint names them, and the trial judge allowed them to come in and defend. Each claim specifically indicates who it is against. The inequitable conduct claim has been clearly amended to clearly and specifically only be lodged against multi-metrics, whereas the exceptional case claim has been broadened to include both multi-metrics. Your Honor, I would – the trial judge let them defend against the individual's defendant. Even if you're correct, the judgment has to be vacated. The claim that they bring against the additional parties doesn't have to be identical. It just has to be such that – and it is in some of these cases. It just has to be related. If you were to find out what the problem – If my view is there's been no amendment adding new parties to inequitable conduct claims, then there would have been no reason for me to interpret her as implicitly vacating the earlier inequitable conduct judgment. But if that's the case, then how could the individuals be held liable for themselves committing inequitable conduct? Litigation misconduct also. She held two things in the alternative. She held these individuals were liable for attorney's fees under exceptional case status, both on the basis of inequitable conduct and separately on the basis of litigation misconduct. Correct. And, Your Honor, if the answer to this logic we've just gone through is that the individuals can't be held liable under inequitable conduct if they weren't charged with it and that you can just rely on the litigation misconduct, then, you know, that's been briefed and we don't think it's correct, but that's where we are. But it still takes out – they couldn't be charged with inequitable conduct and held liable for it if they weren't charged with it. I think maybe your answer to Judge Moore, and she can probably tell me why this is wrong, but I understand on 1644 it's against – the first claim for relief is against multi-metrics. But then on the third claim for relief on 1645, which is against all of the individual defendants, it seems like paragraph 31 does incorporate paragraphs 1 through 30. That's exactly what I meant to say also to Judge Moore. Thank you. But the real issue – You've got to show me what the judgment is. If you say that 54B was automatically vacated as a matter of law, you've got to show me where your judgment on inequitable conduct is. I think it is – and I think I can brief this even afterwards if I have time. This judgment on January of 2010, granted it literally just says it's for fees against the individuals, but this judgment has got to be deemed to subsume everything before it. How does it do that? How does it subsume it? I'm still trying to figure that out. Because if it's just a judgment against individuals for money, then what is it based on? It's got to be incorporating the opinions before that. Otherwise, it's just awarding it out of the blue. It's got to be based on the prior – it merges those prior opinions. I think the judge did find one aspect, which you still have not answered, that the individual defendants did not concede, did not contest, that they controlled the litigation from Medimetrics and had a common interest with Multimetrics on the inequitable conduct issue. So if they conceded that, isn't it all over? You just waived it? No, because even if they controlled Multimetrics, that would give you – that if you have a prior final judgment of inequitable conduct, you could apply collateral estoppel against them for their control. You don't have a prior final judgment even against Multimetrics for inequitable conduct because we're appealing it here. There was a judgment of inequitable conduct. It was vacated in the post-judgment motion to add the parties. A new judgment was entered that incorporated and said everyone committed inequitable conduct, and we all appealed it. So if we agree with the other side on their conclusions with respect to 54B, you're having – the clock having run and not having been vacated, then this case is over. I think still part of it that would still be not over is even if the clock ran on Rule 54B, you've still got to find some responsibility that these individuals knew about what was going on and they never had a chance to try the case. Well, but Judge Farris, you acknowledged that there was control, that they didn't – they waived their right or they didn't argue that they didn't control the litigation. They were the only witnesses. They were clearly involved in the allegations of inequitable conduct. They were the people – the only people in the room, right? I didn't do the lower case, so I don't know. Well, that's what this judge seems to have found. I mean, there was some – the whole case of inequitable conduct was predicated on the conduct of these individuals. There was nothing more than – It was the signatures largely, but they didn't know these signatures were in the – if we had known these signatures were there – Yeah, but they were witnesses. They – you got – whoever was representing them got to cross-examine them or examine – No, because we – – their statement. No, because we didn't know that we were having an issue of inequitable conduct during the trial. We didn't know until after the trial. Yeah, but after the trial, before the judge issued her inequitable conduct findings, she had a hearing and gave you the opportunity. You didn't submit any affidavits or ask for any discovery. She invited that, did she not? And no one asked for that. We couldn't get compelled – I don't recall it being invited, but I have to admit I'm not sure of that. Well, did you ever ask? I mean, she didn't sit there and order inequitable conduct after this. There was a period of time – Briefing. Right. Just briefing, but all the evidence should be – Did you ever request to submit affidavits? I'm sorry? Did you request to submit affidavits? I'm not sure of the answer to that, but I know that the parties – the individuals did put in saying they wanted the right to come in and have a trial and defend themselves. There was a brief put in on that that I could locate with a few moments. Mr. Kaplan, you've gone well over your time. We'll restore two minutes of your time. Thank you, Judge. Why don't you add eight minutes? Mr. Singlow. May it please the Court, Rohit Singlow for Applied Materials, Inc., the appellee. What do you have to say about that Rule 54B judgment? Okay. Get right to the quick on this. Yeah, let's get right to the point. I think there's been a lot of confusion here about what's a very simple record, really. The district court in July of – The issue, really, that I'd like to have an answer to is if a complaint is amended, does that vacate the 54B judgment? No, Your Honor. Why not? For two different reasons. Reason one, the Rule 54B judgment, we must remember, was deciding Multimetrics' claim against Applied Materials. If the Court looks at the Rule 54B judgment, this is page A-16 of the appendix, it's very clear. The district court is ruling on Multimetrics' counterclaim of infringement against Applied Materials. That's the only claim decided in the Rule 54B judgment. And infringement. Yes, infringement, exactly. Their claim of infringement against my client. We, Applied Materials, have no ability to amend their claim against us. There's nothing we could have done in our amended complaint to change their claim against my client. That was all that was decided in the Rule 54B judgment. Nothing we did or could have done thereafter could change that claim. So that's the first reason. There was no amendment of the claim decided in the Rule 54B judgment because it was their claim that was decided. Second, a Rule 54B judgment is immediately appealable, is the fundamental premise of Rule 54. This Court in A-1 Amusement, citing the Ninth Circuit in the Lindsay case, this case originates out of the Ninth Circuit, held that a Rule 54 judgment is immediately appealable, right or wrong. Even if there was some deficiency, not that we think there was, but defect in this Rule 54B judgment, it was immediately appealable. They didn't appeal. So isn't there a lot of openness for trickery here or some sort of subversive behavior because you want to charge my company and then you wait until the time has run so that finding of inequitable conduct, that judgment becomes final, and then you bring me in? It seems – so these parties have got a final judgment, which is going to be res judicata for anything they do. It seems a little off, right, to allow that. Not at all, Your Honor. Not at all, Your Honor. And in fact, in the Nelson case, this is the case that went up to the United States Supreme Court. It's the Ohio cellular case that Mr. Kaplan referred to. The Supreme Court said there that when a party is added, an individual is added to a claim for inequitable conduct and to be responsible for the inequitable conduct and the fees, as long as they get processed, they can be held liable. They can be held liable based on collateral estoppel. The Supreme Court said explicitly – They didn't get to relitigate the inequitable conduct finding because that finding had already moved to final judgment. Well, so let's take this step-by-step. So there is a trial in February or, excuse me, March of 2008. Thereafter, the court itself, the district court, raises to respond to the question of inequitable conduct. It asks counsel for multimetrics. What should we do about this? Counsel asks for a recess to consult with his clients, including the individuals, separate counsel at that time, an individual named Mr. Brucker, a lawyer named Mr. Brucker. This is on the record. He comes back and says on the record to Judge Patel, the district judge, we would like to brief the issue. As you pointed out, Judge Prost, he didn't say we would like an evidentiary hearing, we'd like to put an affidavit, we'd like to take discovery, we think it was Mr. Velikoff. He didn't say anything. He said we'd like to brief it. The district judge said fine. That's what she allowed. She made inequitable conduct findings. Then when we sought fees against the individual appellants, they didn't say we want affidavits, we need discovery. They said add us to the complaint. They requested to be added to the complaint. The district judge, Judge Patel, going out of her way to accommodate their request, said fine. So we added them to the complaint in July 2009. This is added to our claims, not the claims decided on Rule 54. At that point, they had months to take discovery, to litigate the question of inequitable conduct, if they wanted to try to litigate it, to litigate the question of control, whether they should be bound by the prior judgment. They did none of that. They didn't serve a subpoena. They didn't serve discovery. They didn't do anything. Well, we filed a motion for sanctions. Our motion expressly said if they want to introduce contrary evidence, they can. We expressly said we think they controlled and should be bound by race judicata. They could have introduced affidavits saying we didn't control, it was somebody else who controlled, or we didn't participate in the litigation. They didn't do any of that. And so I'm not sure what more process in this case could have been given to them. There was 18 months of litigation over these fees, during which time there was no close of discovery. There was no time the district court said you can't take a subpoena or you can't take discovery or anything. She never denied them a single request. So I'm not sure that this is a case in which there's any problem with trickery against the appellants. Where's the judgment on the finding of 1.4 liability for multi-metrics? So, Your Honor, the Wilford 4B judgment is appealable in and of itself as a judgment. The finding against, from May 2009, of fees against multi-metrics is itself appealable. Under Rule 58A.3, it does not require a separate judgment. So the separate judgment... Where do you find that? Rule 58A.3 says that a separate judgment is not required for attorney's fees under Rule 54. So I think that's what Mr. Kaplan was referring to also. So these kinds of... But that would be against multi-metrics, right? Yes. I think that's what Judge Prost was asking, though. The May 2009 order against multi-metrics was immediately appealable from that document. There's no separate entry requirement under Rule 58A.3. So you're saying that the time for appeal ran out on December the 21st of 08, as far as the Rule 54B fees? It ran out in 2008, the Rule 54B judgment. There is no... So they've cited to Federal Rule of Appellate Procedure 4. There is nothing in Federal Rule of Appellate Procedure 4 that allows a judge and the time to appeal a judgment to be told indefinitely like this. For 18 months? There's no rule. Every... Rule 4 and the Federal rules are crystal clear. The whole point of the system is to make the time to appeal unambiguous. And so Rule 4 says the time to appeal is 30 days. It's only extended if you file one of these four or five specifically identified motions. We didn't file any of those motions. Well, didn't you file an amended complaint between the time that the period of appeal started to run against multi-metrics and the final appellate time period expired? No, Your Honor. So Rule 50... Rule 4 also said at the time that if you want to hold the time for appeal, any such motion for a new trial, for renewed findings, to amend findings, to amend a judgment, have to be filed within 10 days. 10 days of the judgment. We didn't file any motion of any kind within 10 days. Rule 4 says that if the district court wants to extend the time to appeal, it can only extend it for 30 days. There is nothing in any of the rules that allows a district court or anybody to extend the time to take an appeal for 18 months. Secondly, as I've said before, what we moved to amend was our own claims. So under Rule 54, the point of Rule 54 is that some of the claims are finalized for immediate appeal. The remainder of the case proceeds. That's what happened here. Their claim of infringement against us was decided, became immediately appealable. Our claims against them, for example, for correction of inventorship, for fees and sanctions, we had common law claims. Other claims that we had against them, they proceed. And there's nothing that suggests in any case that we've ever seen that after Rule 54B judgment that you can't amend the remaining claims. Obviously, you can continue to litigate, amend, do what you need to do on the rest of the case. That's all that happened here. The amendment you were seeking included a finding of inequitable conduct by these individuals. And that was some substance of what was already in 54B. You couldn't have two different conclusions, right? You couldn't have found 54B and found inequitable conduct against multi-matrix on the record and find no inequitable conduct on the individual. I would agree with you on it. But I don't think that's unusual or strange or any way untoward. So, we moved for fees and sanctions under 285 in the court's inherent power against the individual appellants. The facts on which we were seeking fees and sanctions are the somewhat similar facts or the same facts that were the subject of the Rule 54B judgment. Inequitable conduct and litigation was common. That's true. But you have that in every sanctions case. The Supreme Court said in the Budinich case, this was back in 1988, that just because a fee award relates to the merits, the underlying merits of the case, doesn't mean that you can toll the time to appeal the underlying merits of the case. This Court has said this over and over again in 285 cases. In the Nielsen case, after an inequitable conduct judgment became final, it was not appealed from, then the Nielsen appealed from the fee award and tried to challenge. No, but here what I'm saying is the amendment also implicated your client, the individuals, not just in terms of the fees, but also in terms of finding of inequitable conduct. So it's not just the fees we're talking about, it's the actual finding. Well, I don't think so, Your Honor. There's no finding of inequitable conduct against these individuals. I mean, the finding of inequitable conduct is against the owner of the patent and relates to the unenforceability of the patent. Well, didn't you allege, we were looking at the complaint a few minutes ago on 1644. Yes. Didn't you allege that they committed inequitable conduct? Yes, Your Honor. We allege they committed inequitable conduct. But that's not the judgment we're seeking. The judgment we're seeking, the ruling we're seeking is an award of fees against them, based on that factual predicate, certainly. But we're not seeking an award or a judgment that they committed inequitable conduct. But in order to get the fees, you would have to establish that they committed inequitable conduct. That's correct, Your Honor. That's the subject of the 54B. Absolutely. And there's process for that, Your Honor. They can contest whether they are bound by res judicata, which, as the Court has pointed out, they did not do. They can introduce evidence to try to show that they didn't commit the inequitable conduct. They could try to show that someone else committed the inequitable conduct. If they're not bound, they can relitigate from scratch the entire question of inequitable conduct. Our system of res judicata and finality provides for all of this. The issue here is they didn't do any of that. Is that your position, too, with respect to the individual liability? I mean, the record is kind of thin. There's a lot of strong finding on controllable litigation, some finding on the ownership of stock in a combined way. But is your position is that they didn't contest any of this stuff, so we don't have to worry about it up here? If the Court is asking specifically, Your Honor, about the question of res judicata, that's why I understand your question. I don't think the record is thin at all. No, I'm not. I'm talking about whether these particular individuals should be held individually liable. Whether these individuals should be held individually liable. Yes, on that question, we think the record is very fulsome. I mean, the conduct here, let's start with litigation misconduct, which is subject to an abusive discretion review, which has never been disputed. There's never been an affidavit or a declaration from the other side suggesting they didn't commit all this litigation misconduct. The record of litigation misconduct in this case, Your Honor, with due respect, I think is unequaled, perhaps, in this Court's jurisprudence. I mean, there is perjury. The Court explicitly found perjury in her courtroom, in front of her, about multiple subjects. There is an attempt to bribe a witness, a critical third-party witness, to which there's never been an affidavit or declaration or testimony denying that effort, denying the facts. There were hundreds of documents that a special master found were withheld. There was perjury about this individual, Todd Tomlinson, the conception of the patent. Their witnesses, the ones who were being held individually liable, Boris Kessel and Alan Gershenson, testified under oath at deposition that the invention was invented, working with this individual, Todd Tomlinson, and they hadn't seen him for years. When we found him and put him on our witness list, this report relied on all this evidence and her findings. When we put him on our witness list, they suddenly, spontaneously, without any understanding of what Mr. Tomlinson was going to say, changed their testimony, claiming it was something else. That Mr. Tomlinson came and testified that he had just met with them a few months before their deposition, even though they had said he had moved away and they hadn't seen him in years. So you have issue after issue after issue. I mean, every possible kind of litigation was conduct. So we think, first, that alone, as Judge Moore noted, is an independent alternative basis the district court gave for the individual sanctions against these individuals. And they have not contested the amount of the award, I have to emphasize. It's just what they've contested is the fact of inactive conduct. With respect to inactive conduct, there doesn't seem to be any real factual dispute. I mean, other than lawyer argument, if you look at the record, there's no dispute that these individuals were aware of and committed the inactive conduct. As Judge Moore pointed out, the findings are very clear that Mr. Boris Kessel, let's just start with him, that he is the one who managed the prosecution. He said he admitted, I can provide the citation if the court likes, he admitted that he himself had been the one who submitted the forgery to the court, to the PTO. All he ever said was that it wasn't by his hand, literally that he hadn't done it. But he admitted at page 868 of the transcript of the record that he's the one who submitted this to the PTO. With respect to Mr. Grishenson, the district court looked at, and I don't think it's a thin record at all, the district court looked at not only his conduct at trial with respect to the dates and his lies about the dates of Margulis' death, but there was another file in which Mr. Margulis' signature had been forged six times. I invite the court to look at it. This starts at page 1196 of the transcript, of the record, the appendix. And you will see there that there are six signatures where it's Margulis forged, comma Grishenson, comma Kessel. Or it's Kessel, comma Margulis, comma Grishenson. I mean clearly they were signing documents knowing that Mr. Margulis was dead and that his signature was being forged. So the idea that there was not, I guess we respectfully disagree with the idea that the district court did not have a very fulsome record that she cited extensively on the question of intent and whether they were individually responsible. The district court pointed out, for example, that when Mr. Boris Kessel was confronted with the forgery, and she quotes this testimony at length in her order, he didn't say, oh my God, I can't believe there's a signature, this must be forged. Who did this? How could this have happened? He shrugged his shoulders and said, well, it's not by my hand. That kind of testimony is something a district court can certainly rely upon in coming to the conclusion that they're individually responsible for the inactable conduct. Now I want to go back for a minute to the extent there's any remaining questions, because I agree with the court that a critical issue here is whether the 54B judgment is appealable. Because if it's not appealable, then the only question that remains is whether the individual appellants have liability for fees either because of litigation misconduct, or because of res judicato, or because of the substance of the inactable conduct here that they were responsible for. With respect to the Rule 54B judgment, the other issue that we have not addressed is the claim that appellants have made that it was inappropriate for the district court to issue a Rule 54B judgment, that Rule 54 was not the proper tool to use here. Now that argument has been waived. First of all, we do think it was perfectly appropriate here to issue a Rule 54B judgment, but I have to emphasize that issue has been waived. It was not raised in their opening papers. Below, when the issue of Rule 54B judgment came up, Multimetrics' counsel agreed that Rule 54 was an appropriate mechanism to use here, and that that would give them an immediate right to appeal this inactable conduct judgment. So they didn't dispute it and contest it below. And finally, and most importantly, this Court has held, and the Ninth Circuit has held, that the only way to challenge whether Rule 54 was appropriate is to take an immediate appeal. If you can't wait a year and a half and then go back and collaterally attack the appropriateness of a Rule 54B judgment. Once you have the Rule 54B judgment that's final, and the conduct findings that are final, the May 2009 award, the fee award against Multimetrics, has to be affirmed, because there's no argument they've raised about any infirmity in that fee award. They haven't challenged the amount of fees. They haven't challenged the district court's exercise of her discretion to award fees or find an exceptional case. All they've done is challenged the merits of the inactable conduct finding. But if those inactable conduct findings are final as to Multimetrics, then the fee award against Multimetrics has to stand. Well, wouldn't they have the ability to appeal the finding of inequitable conduct as far as it applies to them? They might not be able to challenge a 54B judgment because the time is run on that appeal time. But why can't they challenge the issuance of inequitable conduct finding against them? Your Honor, you're referring to the three individuals. Right. Yes, we don't dispute that the three individuals on this appeal have the right, theoretically, to challenge the award against them in the finding that they committed inequitable conduct. Well, not only theoretically, but actually. Well, the reason they can't actually is because they didn't challenge it below. You're saying they waived it. I'm saying they waived it. All right. The district court, and they would have the right to challenge that. That's why it's not an unfair process. They would have the right to challenge that. But the district court below found that they were bound by race judicata because they never contested control. And I do want to walk the court through the evidence of that, which is there's a reason they didn't dispute control. They didn't really have an ability to dispute control. They were represented by sophisticated patent counsel below, and if he didn't dispute it, you have to assume that there's a good reason for it. Well, they didn't contest it. They didn't contest it. Yes, Your Honor. And that was a finding by the court. So that is an aspect, I think, where they would have waived it. Yes, Your Honor. Exactly. Exactly. So let's not repeat. Okay. I was only going to walk the court through sort of the evidence backing up that finding of control. That's already in the record, so. Okay. That's fine, Your Honor. The only other thing I'd say on control is just to make sure that we're clear that the word control doesn't mean, as they sometimes seem to suggest, that they exercised complete control over the entity. What it means is a substantial participation in the presentation of the case at trial. And clearly, Mr. Grishenson, Mr. Kessel, Mr. Kessel, they're the only witnesses for multi-metrics. Mr. Kessel has admitted that he's the one who hired counsel and decided to bring this case. Mr. Grishenson and Mr. Borska, well, they're the only witnesses at trial for multi-metrics. There's no way to say that they did not control, for purposes of litigation, this case for multi-metrics. The last issue that I would like to address is the question of due process, which has been raised a number of times, which I think underlies somewhat, Judge Prost, your question and concern. And I think the court itself referred to this during Mr. Kaplan's argument, which is that here, the district court went out of its way to give them process. I mean, I cannot emphasize this enough times. The district court said, in her order finding individual liability for them, in footnote 2, she said, the individual defendants do not contest any of the court's factual findings regarding inequitable conduct or litigation misconduct. That is a critical statement, I think, for the district court to understand this appeal. They never put in any evidence, any declarations, any affidavits. They never sought an evidentiary hearing. They never did anything to contest all of her findings about inequitable conduct and what they had done. So the idea that this could be unfair, I think, in this case, there's no way to say that. Because if it had been the case that they tried to put in evidence and the district court had refused to consider any new evidence, perhaps you could say it was unfair or there was some sort of due process issue. But here, they were given every opportunity, and they never came forward to challenge her. So it's difficult to see how a district court can have committed clear error when the party doesn't come forward with any evidence disputing her findings. I don't think I have anything further unless the court has any questions. Thank you. Thank you. Your Honor, just a couple of things. The individuals could not dispute inequitable conduct below because they asked to do that, and the judge said, you're bound by collateral estoppel because I already found inequitable conduct against the company, so I'm not going to let you. The second point is to say that the Rule 54 judgment involved infringement and not inequitable conduct is just wrong. The four parties that were named in the amended complaint, if those four parties had been in the case in July and the judge had certified multi-metrics appeal up to this court under Rule 54 while leaving the other three individuals to continue to litigate the inequitable conduct charge of the district court, that would have been deemed improper as an improper certification and would have been sent back down. Second, we're not challenging now. We know it's too late to challenge whether the district court properly certified the judgment under Rule 54. That's not what we're saying. What we're saying is that when you came along later and asked for the individuals to be charged with the same claim, the only way the judge had jurisdiction to do that was to vacate the Rule 54. If she didn't vacate the Rule 54, then everything she did after that against the individuals is jurisdictionally void, and it's very clear on this from all those cases that are cited at page 3 through 6. Did the individuals have an opportunity to argue that the 54B judgment was wrong? Could they have, at the point in time when the complaint is amended, there was a long period of time before the next order was entered, could they move, did they make any motions, did they try to put forth something? They put a brief, and as I remember the brief, and I don't want to misrepresent again, I didn't do the trial below, but as I remember the brief, as best I remember it, they put in a brief asking to be named and asking to have a right to come in and present a full case, and the judge said, I'm not going to give you any of that because you're bound, this is at 838, you're bound by collateral estoppel, so I don't have to give you that. Your time is up, Mr. Kaplan. One final sentence? Yes, Your Honor, again, I would encourage the court to search this record for any evidence that these individuals knew these signatures were in the file prior to the end of this trial. They didn't know. Thank you. Case is submitted.